UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CITGO PETROLEUM CORPORATION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 03-CV-0806-CVE-PJC |
| | ) |
| **FOREST C. ROBERTS, JR.,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Now before the Court are Plaintiff's Motion for Summary Judgment (Dkt. # 41) and Brief in Support of Motion for Summary Judgment (Dkt. # 45).[1]  This case involves Plaintiff CITGO Petroleum Company's ("CITGO") enforcement of a guaranty executed by Defendant Forest C. Roberts, Jr. ("Roberts").

On January 3, 2005, CITGO filed its original motion for summary judgment (Dkt. # 29). The motion was granted in part and denied the motion in part by order (Dkt. # 37) entered on February 25, 2005.  The Court granted CITGO's motion as to the issue of liability on the guaranty, and denied the motion as to the amount of damages for which Roberts is liable to CITGO.  In this regard, the Court noted that the damages issue is primarily an accounting issue, and granted CITGO leave to

---

[1]  This case was originally assigned to Judge Sven Erik Holmes.  It was reassigned to Judge H. Dale Cook on March 16, 2005, and reassigned to the undersigned on June 20, 2005.

re-urge its motion with regard to damages at a later date. The second motion for summary judgment (Dkt. # 41), regarding the issue of damages, is now before the Court.[2]

**I.**

In 1991, Roberts executed a guaranty whereby he guaranteed to CITGO the then-present and future obligations and indebtedness of Acme Petroleum and Fuel Company ("Acme"). As stated above, the Court has already determined that, pursuant to the guaranty, Roberts is liable to CITGO for Acme's debts.[3]

Plaintiff asserts that in December 2002, Acme purchased from CITGO gasoline, diesel, and other petroleum products, which were delivered by CITGO to Acme's facilities. Plaintiff further claims that Acme failed to pay the invoices for such products delivered during this period, and that Acme subsequently filed bankruptcy before fulfilling its obligations to CITGO. According to CITGO's records, the amount of such unpaid invoices subject to the guaranty of Roberts totals $1,386,750.71. In support of its claim, CITGO has provided the invoices reflecting that Acme owes CITGO $1,386.750.71. The validity of these invoices is supported by affidavit. (See Aff. of Mary Haddigan, Supplement to Pl.'s Br. in Support of Mot. for Summ. J., Doc. # 46, Ex. A.) Haddigan, CITGO's Manager of Credit and Financial Services at its Tulsa, Oklahoma headquarters, also affies

---

[2] Plaintiff filed a brief (Dkt. # 42) in support of the second motion for summary judgment on May 5, 2005. It appears that when plaintiff filed this brief, it neglected to attach its exhibits thereto, because plaintiff filed a "supplement" on May 6, 2005 (Dkt. # 45), which consisted of its brief and the attached exhibits. For the sake of clarity, the Court will consider the supplemental brief with the attached exhibits (Dkt. # 45) and will refer to that document as plaintiff's summary judgment brief. The Court will also consider the supplement (Dkt. # 46), which consists of the affidavit of Mary Haddigan and the invoices related to the debt at issue in this case.

[3] In its order (Dkt. # 37), the Court found that "the Guaranty is continuing in nature and that the obligations thereunder have not been terminated."

that "[w]hen Acme filed bankruptcy in December of 2002, it owed CITGO $1,386,750.71." (Id.) Moreover, in the Petition for Relief under Chapter 11 of the Bankruptcy Code, filed on December 18, 2002 in the United States Bankruptcy Court for the Western District of Carolina, Roberts represented that the amount of debt Acme owed CITGO was $1,184,085. (Br. in Support of Pl.'s Mot. for Summ. J., Dkt. # 45, Exs. B and D.)

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

CITGO argues that it has presented sufficient evidence to prove that Roberts owes CITGO $1,386,750.71 under the terms of the guaranty. Specifically, CITGO cites Haddigan's affidavit and the invoices attached as exhibits thereto, as evidence that Roberts owes CITGO $1,386,750.71. CITGO further argues that, with regard to the amount owed, Roberts has failed to establish that there are genuine issues of material fact, and therefore CITGO is entitled to judgment as a matter of law.

Defendant Roberts devotes much of his response to the motion for summary judgment to arguing that he is not liable under the guaranty for the debt at issue here. However, as stated above, the Court has already determined that Roberts is liable for this debt. Therefore, the Court will not consider Roberts' arguments with regard to liability.

With regard to the amount of debt owed, Roberts offers several arguments in support of his contention that genuine issues of material fact exist regarding the amount of debt which Acme owes to CITGO. The Court will address each argument in turn.

First, Roberts argues that CITGO has not produced all of the invoices upon which its claim is based. In support of this contention, Roberts points to the affidavit of Mary Haddigan. In the affidavit, Haddigan states that CITGO has supplied "a true and correct summary of ACME's (sic) unpaid invoices along with the back-up invoices." (Aff. of Mary Haddigan, Supplement to Pl.'s Br. in Support of Mot. for Summ. J., Doc. # 46, Ex. A.) Haddigan also affies that "[t]hese invoices were created by CITGO at or near the time of purchase and were kept in the course of the regularly conducted activity of CITGO." (Id.) Roberts presents no authority in support of the proposition that the evidence presented by CITGO is insufficient to support its motion for summary judgment, and the Court finds that he has failed to demonstrate that a genuine issue of material fact exists in this regard. Rather, Haddigan's affidavit, which is uncontroverted in the record before the Court, supports CITGO's contention that the necessary invoices have been produced in full.

Second, Roberts claims that Acme "pre-paid" for CITGO products in the months preceding Acme's bankruptcy filing, and that those cash payments are not reflected in CITGO's invoices. With regard to this argument, the Court first notes that Roberts' own testimony indicates that he did not have personal knowledge of the amount Acme owed CITGO, nor did he have personal knowledge of the payment arrangements between Acme and CITGO. Moreover, Roberts has failed to produce any admissible evidence in support of his contention that Acme had pre-paid for products. In contrast, the uncontroverted affidavit of Haddigan, who did have personal knowledge of the CITGO/Acme accounts, supports CITGO's claim that Acme owes $1,386,750.71 for CITGO deliveries. Thus, the Court finds that Roberts has failed to demonstrate that genuine issues of facts exist in this regard.

5

Third, Roberts argues that CITGO has failed to explain the discrepancy between the $1,184,085 figure set forth in Acme's bankruptcy filing and the $1,386,750.71 claimed by CITGO. However, in his deposition, Roberts admitted that several of the filings submitted in connection with Acme's bankruptcy proceedings had to be amended because they were incorrect. (See Dep. of Forest C. Roberts, Pl.'s Br. in Support of Mot. for Summ. J., Dkt. # 45, Ex. A at 11-12.) Roberts stated that the mistakes in the filings occurred due to time restrictions associated with the bankruptcy filing. (See id.) Moreover, Roberts has presented no facts in support of the figure set forth in the bankruptcy filing, nor has he presented any evidence to refute the figure set forth by CITGO, and supported by CITGO's records. Accordingly, the Court finds that Roberts has failed to show that genuine issues of material fact exist in this regard.

Finally, Roberts argues that Haddigan's Affidavit "is replete with inaccuracies, disputed facts, and evidence of the failure to present a complete accounting." (Def.'s Resp. to Mot. for Summ. J., Dkt. # 52, at 7.) However, Roberts again offers no facts in support of this contention. Mere conclusory allegations are insufficient to defeat summary judgment; rather, "there must be evidence on which the [trier of fact] could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. Accordingly, the Court finds that Roberts has failed to demonstrate the existence of genuine issues of fact in this regard.

Based on the above, the Court finds that CITGO has carried its burden under Rule 56(c), thereby requiring Roberts to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586-87. This Roberts has failed to do. He has not presented sufficient facts to demonstrate that genuine issues of material fact exist regarding the amount owed to CITGO under the terms of the guaranty. Accordingly, the Court finds that no

genuine issues of material fact exist, and that plaintiff CITGO is entitled to judgment as a matter of law.

### III.

**IT IS THEREFORE ORDERED** that plaintiff CITGO Petroleum Company's Motion for Summary Judgment (Dkt. # 41) is hereby **granted**. CITGO should submit a proposed Judgment by **August 19, 2005.**

**DATED** this 17th day of August, 2005.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT